GRAND FALLS MUTUAL IRRIGATION COMPANY v. W. A. WHITE ET AL.

Decided June 11, 1910.

1.—Receivers—Appointment—Insufficient Cause.

It is an elementary principle that a receiver should not be appointed when no benefit is to be gained by the appointment.

2.—Same.

Where it appeared in a proceeding for the appointment of a receiver for an insolvent corporation, that the appointment was sought, not for the purpose of winding up the affairs of the corporation and subjecting its assets to the liquidation of its liabilities, but for the purpose of conducting and managing the business of the corporation, and it was not shown that a receiver would have any more funds or any better facilities for conducting the business than the officers of the corporation then had, it was error to appoint a receiver.

Appeal from the District Court of Ward County. Tried below before Hon. S. J. Isaacks.

*Hefner & Hudson,* for appellant.

*J. E. Starley,* for appellees.

DUNKLIN, ASSOCIATE JUSTICE.—The Grand Falls Mutual Irrigation Company has appealed from a decree appointing a receiver of its property. W. A. White and others, who were complainants in the suit, alleged that the defendant company had contracted and agreed to furnish water for the irrigation of lands belonging to the complainants who had secured such water rights by the purchase of capital stock in the company, but that defendant had breached its contracts with them, and as a result complainants were unable to farm their lands. Each of the complainants sought a judgment against the defendant company for the damages so sustained by him, and prayed for the appointment of a receiver to take charge of and to operate all the property constituting defendant's irrigation system, and the receiver appointed was vested with that power.

The facts alleged in the petition and established by proof upon the hearing of the application for appointment of a receiver were set out in the findings filed by the trial judge, which are as follows:

"1.   The defendant, Grand Falls Mutual Irrigation Company, was incorporated under the laws of the State of Texas as an irrigation company in June, 1907, and took possession of its present properties in December, 1908, which properties were at the time of its organization in the hands of a receiver.

"2.   The Grand Falls Irrigation Company, of which defendant is the successor, whose rights and franchises the defendant now owns and whose contracts it has assumed, made an appropriation of a part of the waters in the Pecos River in 1895, which appropriation was for five hundred (500) cubic feet of water per minute, and was made in accordance with the law; and the Pecos River is the source of the supply of water for the defendant company.

"3.   The defendant and its predecessors in interest are and were all public service corporations.

"4.   The plaintiff owns 400 acres of land described in his petition, and the interveners own the land described in their respective petitions, lying under the irrigation system of defendant, on which plaintiff and interveners own water rights entitling them to the use of water from the canals of the defendant.   These water rights were purchased from the predecessor of the defendant and are fully recognized by the defendant as binding obligation upon it.

"5.   Under the terms of said water right the defendant is bound to convey water to plaintiff and interveners to water their lands, and the plaintiff and interveners are obligated to pay defendant $1.25 per acre per annum as rental for such water.   This water right contract provided that the water rental should be paid on October 1st of each year, in advance; but the custom of the defendant and its predecessors heretofore and up to this time has been to allow the payment of said water rentals to be made at any time during the year, and not to demand or enforce payment of same in advance.

"6.   Defendant did not at any time during the year 1909 refuse to furnish water to plaintiff or any of the interveners on account of his or their failure to pay water rentals in advance.

"7.   The amount of water furnished by defendant to plaintiff and the interveners during the year 1909 was wholly inadequate to produce an average crop such as plaintiff and interveners undertook to raise and such as is adapted to that locality.

"8.   The crops of the plaintiff and interveners, planted on the land described in their respective petitions, in the year 1909, were almost a total failure; such failure was caused by the failure of defendant to furnish water for irrigation, in accordance with its contract.

"9.   Plaintiff and interveners each suffered great damage in the loss of crops and in the value of their lands, as alleged in their petitions.

"10.   A continuation of conditions as existed during the year 1909 would soon destroy the value of plaintiff and interveners' land as agricultural land.

"11.   During the year 1909 the Pecos River was very low, and the

water supply small except during certain periods. The scarcity of water in the Pecos was in part the cause of the failure of the defendant company to furnish the plaintiff and interveners with a sufficient supply of water for irrigation.

"12. The supply of water in the Pecos River was sufficient if the defendant company had maintained its system, towit: its canals, headgates, laterals and ditches, in good condition during the year, and when rises in the river came to have furnished plaintiff and interveners and other water users under its system, a sufficient supply of water for irrigation to have enabled them to have grown fair crops during the season.

"13. The flow of water in the Pecos River is very irregular, at times there is a very litle water in the river and at other times there is an abundant supply, and it is necessary for the defendant company, in order to properly serve its water-right owners, to so maintain its canals, laterals, ditches and headgates as to be able to divert and carry a large supply of water when the river is high.

"14. Numerous irrigation companies take water from the Pecos River above the source of supply of the defendant company, which said numerous companies during the year 1909 took large amounts of water from the said Pecos River to the detriment of the patrons of the defendant company.

"15. Defendant company took no active steps to protect its probable rights to the use of some of the water diverted from the Pecos River by the numerous companies aforesaid.

"16. The defendant company had allowed its canals and irrigation system to become dilapidated and unfit for reasonable use.

"17. It is feasible and possible for the defendant company at a reasonable cost, to put its canals and irrigation system in proper condition, and in such condition it would be feasible for it to supply its water-right holders with water for irrigation, from the said Pecos River.

"18. During the year 1909 the defendant company permitted its irrigation system to get in such bad condition that it could not furnish water to irrigate exceeding three thousand acres of land during the irrigation season, and it was necessary for it to prorate such water over the seven or eight thousand acres in cultivation; and the land of plaintiff and the interveners because of this condition failed to receive sufficient water to grow and mature crops planted on same.

"19. There are 17,000 acres of land under defendant's system, on which water rights have been sold, that are entitled to a pro rata distribution of the water from said system, and there are seven or eight thousand acres in cultivation demanding water.

"20. The capital stock of the defendant company is of 30,000 shares of $10 each. Archie Thompson is the president of said company, and 13,000 shares of this stock stand in his name as trustee for the benefit of the holders of water rights under the system of defendant company, among which water-right holders are the plaintiff and all of the interveners.

"21. The defendant company has outstanding $150,000 in bonds,

issued in February, 1908, on which the annual interest is $9000, payable semi-annually. The semi-annual interest due December 1, 1909, has not been paid. The total value of all defendant's property is not in excess of $125,000.

"22. The defendant company has other indebtedness to the amount of $25,000, all of which is interest bearing at from seven to ten per cent per annum.

"23. During the year 1909 the defendant company expended approximately $17,000, of which a very small amount went into improvements or betterment of the system.

"24. The plaintiff and none of the interveners have paid the defendant company all the amounts specified in the water-right contracts for the year 1909, a controversy existing between plaintiff and all of the interveners and the defendant company as to the amount actually paid during the year 1909, and a controversy also existing between plaintiff and all of the interveners with the defendant company as to whether or not the defendant company is entitled to any payment for water during the year 1909. Neither plaintiff nor any of the interveners have paid the defendant company any amount for water rentals for the year 1910.

"25. If the conditions existing continue, plaintiff and interveners will be forced to abandon the cultivation of their lands, and the principal value of said lands will be destroyed.

"26. The defendant company is insolvent and has no funds with which to maintain its plant or with which to put the same in proper condition to comply with its contract to furnish water to plaintiff and interveners, and defendant is making no effort nor has it made any effort to so improve its system as to be able to furnish plaintiff and interveners with an adequate supply of water.

"27. The defendant company is probably liable to the plaintiff and the interveners for damages for its failure to deliver them water in accordance with its contracts."

The facts so found did not warrant the appointment of a receiver. It is an elementary principle that a receiver can not be appointed when no advantage is to be gained by the appointment. High on Receivers (3rd ed.), sec. 7; 34 Cyc., 22.

While there was a finding that during the year 1909 defendant had expended approximately seventeen thousand dollars of which a very small amount was expended for the betterment of the irrigation system, there was no finding that any of the funds of the company had been misappropriated. For aught that appears in the findings, the funds so expended may have been applied upon the indebtedness owing by the company. In addition to the facts found by the trial judge, the record shows that the complainants and other parties owning water rights in the irrigation system had, in a public meeting, adopted a resolution to refuse further payment of water rents to defendant, upon the ground that the damages sustained by them by reason of defendant's failure to

comply with its contracts to furnish water to irrigate their lands were in excess of the amounts claimed by defendant for water rents; and the damages claimed by complainants in this case and for which they seek judgments aggregate many thousands of dollars. It may be that such claims are well founded, but, nevertheless, it appears from the record that the only source of revenue which the defendant has is the collection of water rents from the various owners of land who have purchased water rights from the defendant. It was not shown that the receiver has facilities for collecting those rents superior to those possessed by defendant, nor that sufficient funds for the proper operation of the plant can be collected by any one. As shown by the findings, the lands for which water rights were purchased are worthless without irrigation. The appointment of a receiver was sought not for the purpose of winding up the affair of defendant and subjecting its assets to the liquidation of its liabilities, but for the purpose of supplying the water needed to irrigate the lands of those who had purchased water rights. In the light of the entire record we fail to perceive how the receiver will be able to accomplish the results expected from the operation of the property by him.

For the reasons noted, the order appointing the receiver is vacated, and this order will be certified to the trial court for observance.

*Appointment of receiver vacated.*